AMERICAN PUBLISHING COMPANY, APPELLANT, *v.* A. FISHER AND AARON KEYSER, COPARTNERS AS A. FISHER BREWING COMPANY, RESPONDENTS.[1]

1. WRITTEN INSTRUMENT.—MATERIAL ALTERATION.—Plaintiff made and signed a written offer to manufacture certain goods for defendant at a specified price, which defendant signed at the instigation of the salesman of the plaintiff for the purpose of showing that the salesman had called upon his firm and made the offer contained in the writing, as a basis for future orders for supplies. Afterwards plaintiff interlined above defendants' signature, without defendants' knowledge or consent the following words, "All terms and conditions included in above, approved, read and agreed." *Held*, that defendants were not liable as on an accepted offer, since the alteration was a material one.

2. AMENDMENT TO PLEADING.—DISCRETION OF COURT.—Under 2 Comp. Laws 1888, § 3256, authorizing courts in their discretion to allow amendments to pleadings in certain particulars upon notice, it is not an abuse of discretion to allow an answer to be amended at the trial after the introduction of testimony, where the same is allowed upon terms and no objection is made that it was without notice.

3. CONSTITUTIONAL LAW.—JURY TRIAL.—UNANIMITY OF VERDICT.— Session Laws 1892, C. 44, providing that in civil actions a verdict may be rendered by a concurrence therein of nine or more jurors, does not conflict with Const. U. S. amendment 7, which provides that in suits at common law where the value in controversy shall exceed $20, the right of trial by jury shall be preserved. *Hess* v. *White*, 9 Utah, 61 (33 P. R. 243) followed.

(No. 429.  Decided June 12, 1894.  37 P. R. 259.)

---

[1]Appealed to the supreme court of the United States, August 15, 1894.

Appeal from the district court of the third judicial district, Hon. Charles S. Zane, *Judge.*

Action by the American Publishing Company against A. Fisher and Aaron Keyser, copartners under the firm name of A. Fisher Brewing Company. From a judgment for the defendants', plaintiff appeals. *Affirmed.*

*Messrs. Dey & Street (F. W. Von Cotzhausen,* of counsel), for appellant.

The circumstances alleged must, if proved, necessarily and at all events, constitute fraud. The case must not be left to mere interference. 1 Bigelow on Frauds, 114. It must be shown in what the fraud consists and how it has been effected. 8 Am. & Eng. Ency. of Law, 653; *Estep* v. *Armstrong,* 11 P. R. 132; Id. 716. The pleadings must show the connection of the fraud with the alleged damage and the fraud must sustain to the damage the relation of cause and effect. 1 Bigelow on Fraud, 115–16. The fraud alleged must be proved; other fraud will not answer. Id. 179, note; *Hoy* v. *Robinson,* 31 P. R. 62. When the terms of a written instrument are impeached, the evidence should be clear and the facts abundantly established. *Rabbit* v. *Dottan,* 14 Fed. Rep. 19. Where a party can protect himself by ordinary care and prudence, he must do so, and if he relies upon the representations of another with whom he stands on equal footing, neither a court of law nor equity will relieve him from the effects of such folly. *Notting* v. *Wright,* 72 Ill. 390; Cooley on Torts, § 570–572; 8 Am. & Eng. Ency. of Law, 643; *History Co.* v. *Dougherty,* 29 P. R. 649.

Every one is presumed to know the effect of a contract which he signs, and misrepresentations as to its legal effect made to him by the other party, are not actionable and will not invalidate the contract. 8 Am. & Eng. Ency. of

Law, 636, note; *Upton* v. *Tribulcock*, 91 U. S. 45; *Clem* v. *Newcastle R. R.*, 9 Ind. 488; *Gagger* v. *Winslow*, 15 N. W. R. 242; *Slaughter* v. *Gurson*, 13 Wall. 379; *Smither* v. *Calvert*, 44 Ind. 242. If a party is illiterate and unable to read and write and is induced to sign the instrument by fraudulent misrepresentations as to its legal effect, this is fraud in the execution and is available at law to defeat an action founded on the instrument. *Davis* v. *Snyder*, 70 Ala. 315. For the party to treat the contract as if still binding, after he was drawn into it by fraud, will ordinarily have the effect to waive the right to treat it as invalid. 1 Bige. 434; *Nounnan* v. *Suter Land Co.*, 22 P. R. 515; *Grymes* v. *Saunders*, 93 U. S. 55; 8 Am. & Eng. Ency. of Law, 637, note. The alteration to affect the validity of the instrument must be material. *Burnham* v. *Ayer*, 35 N. H. 354; *Cole* v. *Hills*, 44 N. H. 227; *Com.* v. *Bank*, 98 Mass. 12; 2 Bige. on Fraud, 637. There is a presumption that the alteration was made before the execution of the instrument. *Ward* v. *Allen*, 2 Met. 53; *Gooch* v. *Bryant*, 1 Shep. 390. The defendant cannot plead fraud as a defense and still retain the fruits of the contract. 3 Bigelow, 175, note p. A contract entered into on Sunday and void for that reason, is made valid by subsequent affirmance and ratification. *Van Hoven* v. *Irish*, 10 Fed. Rep. 14; *Gregg* v. *Wyman*, 4 Cush. 422; *Hopkins* v. *Stefan*, 79 Wis. 45.

The seventh amendment to the constitution of the United States provides that " in suits at common law, the right of trial by jury shall be preserved." The meaning of the words " trial by jury " *ex vi termini* has always been well understood and its meaning certain. 2 Story on Const. § 1779; Miller on Const. 492; Opinion of Justices, 41 N. H. 550; *State* v. *Cox*, 8 Ark. 436; *Reece* v. *Knott*, 3 Utah, 451. Seventh amendment is controlling in this territory. *Webster* v. *Reid*, 11 How. 437; *Callan* v. *Wilson*, 127 U.

S. 540; *Reynolds* v. *U. S.*, 98 U. S. 145; *Bradford* v. *Ter.*, 34 P. R. 66. One of the constituent parts of a trial by jury, is that it should be composed of 12 men. 2 Hale, 161; *Narval* v. *Rice*, 2 Wis. 22. Unanimity is a prerequisite to a valid verdict. 2 Story on Const. § 1779; Cooley on Const. Lim. 320; *Work* v. *State*, 2 Ohio St. 296; *Kleinschmidt* v. *Dunphy*, 1 Mont. 131; *Bradford* v. *Ter.*, 34 P. R. 66–68; *State* v. *McClear*, 11 Nev. 39–60; *Reece* v. *Knott*, 3 Utah, 451–454–5. The reasons given by this court in *Hess* v. *White*, are ably answered and refuted in *Bradford* v. *Ter.*, *supra.*

*Messrs. Rawlins & Critchlow* (*Messrs. Brown & Henderson*, of counsel), for respondents.

SMITH, J.:

This is an action by the plaintiff to recover of defendants $20,844.75, claimed to be due upon a written contract, which is set out in the complaint, and is in words and figures as follows:

"March 28, 1890. A. Fisher Brewing Company, Salt Lake City, Utah—Gentlemen: Will submit sketch for your trade-mark, with sketch for your bottle labels, also submitting finished proofs of plates, and will furnish you with one and one-half (1½ million) million labels in the course of a year after the proofs have been made, in black and bronze, with trade-mark inserted, at fifty-five cents (55c.) per M. labels; and will duplicate this first year's shipment in each of the following five years at same rate after the expiration of this first year. Will also submit six different kinds of sketches for small advertising cards on style of cards submitted, printed in colors in front and black on back, furnishing you with 50 M. of each kind of cards, after sketches have been submitted, as soon as ready, at $9.75 per M. cards. We shall also insert your trade-

mark and compliment card on your edition of the panoramic view of Salt Lake City, and will furnish you with 10 M. copies of said Salt Lake City view, with trade-mark inserted, after sketch of trade-mark has been submitted to you, as soon as ready, at 97c. per copy (ninety-seven cents) per copy of said view. Will attend to the application for registration of your trade-mark for you, and will submit designs for your different stationery headings and for a hanger in course of a year, with your trade-mark embodied on same, furnishing you with 10 M. of each kind of the following stationery as soon as ready, viz., letter heads $8\frac{1}{2}$x11, letter heads $8\frac{1}{2}$x$5\frac{1}{2}$, note heads $5\frac{1}{2}$x$8\frac{1}{2}$, statements $5\frac{1}{2}$x$8\frac{1}{2}$, bills $8\frac{1}{2}$x7, business cards and envelopes. Will also send you proof of bock card submitted in spring 1891. Price of hangers and price of bock cards, in colors, is $37\frac{1}{2}$c apiece (all prices are made on goods at our office at Milwaukee, with your name and trade-mark inserted, and will furnish you 300 bock cards for the season of 1891. Terms, cash on delivery. Very truly yours, American Publishing Co., of Milwaukee, Wis. Per A. E. Cotzhausen, Treas. All terms and conditions included in above approved, read, and agreed. A. Fisher Bry. Co., A. Fisher." (Signed in duplicate.)

The complaint alleges, in substance, that plaintiff substantially performed said contract on its part, except as to certain particulars wherein it was prevented by defendants, and alleges that defendants have paid no part of the sums due for articles furnished under said contract. The defendants answered, denying that they ever made the contract sued on, and allege that it was fraudulently altered, and is a forgery; but allege affirmatively that, owing to certain statements of the representative of plaintiff, they did indorse their firm name on the proposal of plaintiff, but with the express understanding that it was in no sense a contract, and was for an entirely different

purpose, and that it was at the time so understood by both parties. The answer also sets out at great length an explanation of the reasons why the defendants approved certain designs for work afterwards done by plaintiff. Upon the trial a verdict was rendered in favor of defendants, concurred in by nine jurors. A motion for a new trial was overruled, and plaintiff appeals.

The alteration which it is claimed was made in the contract sued on, and which defendants claim rendered it a forgery, was the interlineation above the name of defendants' firm, as indorsed on the proposal, of the words: "All terms and conditions included in above approved, read, and agreed." The evidence as to whether these words were interlined after the defendants indorsed the contract was certainly squarely in conflict. The question was submitted to the jury, and they found it to be a forgery.

We do not feel that we would be authorized to disturb their verdict. We think the alteration alleged to have been made, and set out above, was material, and, if the writing had been a contract before, the alteration would have had the effect to destroy it, and render it a nullity; and, of course, if it was not a contract before, the unauthorized addition of these words could never make it one. Very slight alterations in a written instrument, made after it is signed by the obligor, if made without his knowledge or consent, and made by a party interested in the contract, or at the instance of such party, will destroy the instrument altogether. See *Robinson* v. *Reed*, 46 Iowa, 219; 2 Add. Cont. p. 853; Bigelow, Frauds, 255, and cases cited in note. In the brief of appellant we are urged to set aside the verdict because the evidence fails to sustain the plea of fraudulent interlineation, and the same matter was earnestly presented in the oral argument. But there was evidence in the case from which the jury would have been justified in finding that the interlineations, both in

the original contract and in the approvals, were made as claimed by defendant, so that we cannot disturb their finding. The appellant also urges that, admitting that the alterations were made as claimed by defendant, and were unauthorized, still it does not detract from or add to the agreement.

We have already said that we are of opinion that the alterations were material, and a very casual reading of the contract, as set out in the complaint and copied in this opinion above, will, it seems to us, convince any one that the words added above the firm name of defendant, to-wit, "All terms and conditions included in above approved, read, and agreed," are of vital importance in determining the meaning and legal effect of the entire instrument. Without these words, the explanation offered by defendant as to why he signed the paper at all, and his claim that he did so merely to show that the salesman of plaintiff had called on his firm and made the offer contained in the writing, as a basis for future orders for supplies, is a reasonable one. With these words in the writing, it is impossible for any one to believe that explanation. With these words added, the writing appears to be a perfect contract, consisting of an offer and acceptance. It is not our purpose to discuss at length the evidence introduced, or to attempt to say who ought to be believed or who should be disbelieved. We do say, however, that the entire transaction, so far as the plaintiff is concerned, bears all the evidences of the rankest kind of fraud and imposition upon the defendants. If this transaction is to be upheld, the defendants will be compelled to pay for enough advertising matter to run them for an indefinite period of time, variously estimated at from 10 to 100 years, the same being of a character that would ordinarily be changed each season. It may be said that the courts are not guardians for business men who make foolish and improvident con-

tracts, and the appellant here urges this thought upon our consideration, and we concede that it is in a large measure correct. But where, as in this case, the alleged maker of such a contract denies that he made it, then the nature of the bargain, it being one of such a ruinous character as the one under consideration, is quite cogent evidence that no sane business man ever entered into it, except he was imposed upon by some unfair means.

The course of dealing carried on by the plaintiff, as shown by the record, is certainly very singular, and bears evidence of a deliberate conspiracy to entrap the defendants. Such being the tendency of the entire evidence, it is not difficult to see how the jury, even upon the statement of defendant Fisher alone, found that the contract, so called, had been fraudulently altered, even though their verdict was equivalent to a verdict of guilty of forgery against the agent of plaintiff.

One other objection urged here is that defendants· were permitted to amend their answer on the trial, and after the introduction of testimony was begun. The amendment was allowed without previous notice, but no objection was made on this ground. "The court may, in its discretion, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading," etc. Comp. Laws Utah, § 3256. Terms were imposed as a condition of filing the amendment complained of, there being no objection on the ground that it was without notice. We think there was no abuse of discretion.

The last objection urged is that the verdict was rendered by only nine jurors. This matter we have recently fully passed upon, and in our opinion the law authorizing a verdict by nine or more jurors in a civil case is valid. *Hess* v. *White* (Utah), 33 Pac. 243. We are aware that two other territorial supreme courts, on a like statute, have taken a contrary view since the opinion in *Hess* v. *White*,

was rendered *(Carroll* v. *Byers* [Ariz.] 36 Pac. 499; *Bradford* v. *Territory,* [Okl.] 34 Pac. 66), and one territorial supreme court has decided practically in accordance with our view. Still we adhere to the rule we have already declared on this subject. We do not deem it necessary to notice other matters in the brief of appellant. The appellant's brief nowhere contains a concise statement of the points, or any point, on which a reversal is asked. While it is very lengthy, it is difficult to determine from it just what occurred in the district court that is complained of here.

We have discussed all the matters which we think are presented by the record, although we have omitted several about which appellant's brief has much to say. The judgment of the district court is affirmed, with costs.

MERRITT, C. J., and MINER and BARTCH, JJ., concur.