THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. José MANUEL DELGADO LAFUENTE, Defendant and Appellant.

No. CR-68-120.    Decided May 8, 1969.

*Santos P. Amadeo* for appellant. *Rafael A. Rivera Cruz, Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor General,* and *Juan José Ríos Martínez, Assistant Solicitor General,* for The People.

PER CURIAM: On September 6, 1967 a jury, by a majority of 10 to 2, found appellant guilty of the offense of attempt to commit robbery. Against the sentence of from 3 to 7 years in the penitentiary he brought this appeal assigning the commission of five errors.

■ As the first he maintains that the verdict is null because it was not unanimously rendered as required by the Sixth Amendment of the Constitution of the United States, in the light of the cases of *Reid* v. *Covert,* 354 U.S. 1; *Duncan* v. *Louisiana,* 391 U.S. 145 (1968); *Thompson* v. *Utah,* 170 U.S. 343; *American Publishing Co.* v. *Fisher,* 166 U.S. 464, and *Reynolds* v. *United States,* 98 U.S. 145.

■■ If the doctrine invoked by appellant were applicable to Puerto Rico, a question which we are not deciding, the same could not be available to appellant. *DeStefano* v. *Woods,* 392 U.S. 631, decided by the National Supreme Court on June 17,

1968; *People* v. *Cruz Morales*, 96 P.R.R. 651 (1968), *People* v. *Morales*, Judgment of October 24, 1968. The first error was not committed nor the second either. In the latter the instruction as to defendant's flight from the scene of the crime·is challenged. Aside from the fact that appellant did not object to said instruction, or request any special instruction, for which reason his contention is untimely—*People* v. *Del Valle*, 91 P.R.R. 167 (1964)—both the evidence for the prosecution as well as that for the defense warranted that the instruction on flight be transmitted to the jury in the manner in which the judge did it. The prejudiced party testified that when defendant placed something on his back he moved fast and tried to defend himself with a saber and there defendant wounded him and went away running. Defendant himself testified that he went away running and left his automobile. Before transmitting the instruction on flight the judge said to the jury: "You will recall in the evidence, from the testimony of the prejudiced party in this case the circumstance appears according to him, that after defendant sought to obtain the money he had and he offered certain resistance with the machete and was wounded, defendant . . . left said place in a certain way; if you believe that evidence and believe it beyond any reasonable doubt, and believe that the way in which defendant went away is a flight, you should take into consideration this instruction." The instruction which followed as to flight is correct. *People* v. *Vega Santos*, 88 P.R.R. 264 (1963). So that the judge left to the jury the determination, beyond all reasonable doubt, as to whether the manner in which defendant went away from the scene of the crime constituted a flight. As we have already said the facts justified the instruction.

■ The court did not instruct the jury, as appellant alleges in his third assignment of error, that in the offense of attempt to commit robbery the specific intent is not an element of said offense. In order to define the offense of attempt to

commit robbery it was indispensable to define first the offense of robbery. While defining this offense it was when the judge said that the specific intent was not an element of the same. This is correct. *People* v. *Betancourt,* 66 P.R.R. 127, 131 (1946). The judge instructed the jury that to find defendant guilty of the offense charged against him, they should reach "the conclusion beyond reasonable doubt, that in the place and date referred to in the information this defendant tried to commit the offense of robbery in the person of Gerardo Valentín Rivera. . . ." He also charged them that if they believed that defendant did not try to commit the offense of robbery or if they had a reasonable doubt about whether or not he tried to commit said offense, they should acquit him.

The Penal Code does not define the offense of attempt to commit robbery. In its § 50 it provides a penalty for an attempt to commit an offense. Said section provides to that effect that every person who attempts to commit any crime but fails, or who is prevented or intercepted in the perpetration thereof, where no provision is made by law for the punishment of such attempt shall be punished in the manner stated in the same section.

■ To constitute an attempt, the defendant must (1) with an intent to commit a specific crime, (2) do an overt act directed to its commission, which goes beyond mere preparation and is apparently suitable for that purpose, but (3) which fails to result in the commission of the intended crime. Wharton, Criminal Law and Procedure, § 71, 12th ed.; *People* v. *Buffum,* 40 C.2d 709; *People* v. *Anderson,* 1 C.2d 687; *People* v. *Gallardo,* 41 C.2d 57.

The instruction transmitted in this case complies substantially with the statute.

■ The omission to give an instruction to the jury in the sense that defendant's state of intoxication could acquit him of the offense charged against him is assigned as a fourth error.

Aside from the fact that defendant did not request the indicated instruction, the intoxication to which § 41 of the Penal Code (33 L.P.R.A. § 87), refers to the effect that whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time of the crime, in determining the purpose, motive, or intent with which he committed the act, it must be of such degree as to render defendant incapable of forming or conceiving the purpose, intent or malice which according to law is a necessary element or ingredient of the crime charged. *People* v. *Febres*, 78 P.R.R. 850 (1956); *People* v. *Rosado*, 78 P.R.R. 416 (1955). As to the evidence of intoxication there is only in the record defendant's testimony to the effect that he had drank liquor, several drinks. The evidence, then, did not establish the intoxication referred to in the cited § 41 of the Penal Code. Defendant's own testimony reveals that in the early morning of the day of the occurrence of the crime he was not in the state of intoxication contemplated by law. *Cf. People* v. *Sánchez Vega, ante,* p. 129.

■ Lastly appellant challenges the sufficiency of the evidence. As the Solicitor General correctly summarizes, it is as follows:

". . . As evidence for the People Gerardo Valentín Rivera testified that on the night of June 25, 1967 he was working in the Shell gasoline station located at Corcordia Street, corner of Bolivia, as a salesman or watchman. Appellant went in and asked him for gasoline for an automobile which had run out of gas at a nearby place. He asked appellant if he had brought a container, appellant answering him in the negative. The deponent went towards the back part of the business to look for a can to pour the gasoline into and on the way defendant placed something on his back and told him to hand him over any money he had with him. With a saber which the deponent had in his hands

he defended himself, wounded appellant and the latter went away running. (T.E. pp. 7–10, 19–21.)

"Randolph Zambrana testified that he is a special agent of the detective (T.E. p. 27). He investigated the facts of the case and had an interview at the Medical Center with appellant who had some wounds on the left hand. (T.E. p. 28.)

"As evidence for the defense, defendant himself testified explaining that that day he left his work in the afternoon and went home, afterwards he went to the Barrio Obrero to pay some money which he owed. Later he went to a business where he drank some beers. While returning, his automobile ran out of gasoline and he pushed it to a place near a garage, he asked Valentín if he could give him some gasoline, the latter asking him if he had brought a container and the deponent answered him in the negative. Valentín said that he was going to see if he could find something in which to pour it and the deponent went at his side. When Valentín was looking for the can, the deponent went to look for the money to pay and touched Valentín. Immediately the latter placed a machete on his body, showing the court the manner in which he placed the machete, and wounded his hand. When he was going towards the street escaping, he fainted, falling on the ground. (T.E. pp. 35–37, 40–41.) He left the automobile and did not tell anything to detective Zambrana about the fact that he had left an automobile near the gasoline station.

"As rebutting evidence, the prosecuting attorney presented the testimony of Randolph Zambrana, who testified that when he interviewed appellant on the night of the occurrence the latter told him that he had been wounded, without mentioning the manner in which it had happened. He did not testify about the gas station nor that his automobile had ran out of gas." (Solicitor General's Report, pp. 15 and 16.)

The testimony of the prejudiced is final as to the identification of defendant.

The judgment appealed from should be affirmed.